Case number 17-3065. The United States of America v. Alvaro Alvaran-Velez, also known as Marcos Appellant. Ms. Hernandez for the appellant, Ms. Heller for the affidavit. Ms. Hernandez, good morning. Good morning, Your Honor. May it please the Court. I represent Alvaro Alvaran-Velez. I was appointed to represent him on appeal. The case is pretty straightforward. He was convicted of a drug trafficking offense of conspiracy to import cocaine into the United States. He was sentenced thereafter. The Sentencing Commission lowered the guidelines for all drug cases essentially by reducing the offense level by two levels pretty much across the board. He sought a resentencing. The district court opined that if it was up to her, she would definitely reduce his sentence proportionate to what, to the way in which she had previously treated him at the original sentence. But she felt compelled by the new guideline policy which said you cannot reduce a sentence below the guideline, the amended guideline range. That's the key. At the time that he was – that he committed the offense and that he was sentenced, what the guidelines said was that the court should consider a term that it would have imposed had the guidelines been as now constituted. Ms. Hernandez, in what – in what respect would that have covered him? As I read 1B1.10 as it existed at the time that your client was sentenced, it only spoke to under 1B1.10c, only spoke to amendments covered by this policy statement. And it lists a number of amendments which, of course, did not include the amendment that covers your client because that amendment had not yet been made. So I don't see how this provision covered him, gave him a more favorable regime at the time he was sentenced or committed the crime as compared to when he was resentenced. It's correct that 1B1.10 did not have the provision that reduced the guideline amendment for drug cases. But it did have the other provision that allowed a court to do a proportional reduction. You're talking about B. You're referring to B? Excuse me? When you said had the other provision allowing a proportional reduction, you're referring to B. Correct. The provision that said consider the term you would have imposed. And it's correct that at that time you did not have the drug guideline reduction. But that's, I would argue, is the manner in which the ex post facto clause applies. You apply the guideline or the law in effect at the date of sentencing and you exclude that portion that is less favorable to the defendant. I think that's how the Supreme Court treated the good time credit law in Weaver v. Graham in 1981. So you just excise the part. You don't undo the whole statute. But you're saying that it's less favorable than this, the version of 1B1.10 that's at A12 of your brief, which was in effect at the time. And my question is, how did that treat him at all, let alone more favorably than under the law at the time of the resentencing? Well, there were the part of the policy statement that treated him more favorably was the part that said when applying a guideline, a retroactive amendment, consider the defendant or consider the term the court would have imposed. I admit, Your Honor, that the provision that actually reduced the guideline, the drug guideline, was not in effect at that time. So what he, what Mr. Avaloran is seeking is to have the current 1B1.10 apply to him with the guideline reduction for drug cases, but not apply the provision that came into effect in 2010, which precludes a reduction below the amended guideline. So he's asking, apply the current guideline with Amendment 782 for the drug amendment, but do not apply an intervening change, which was in 2010, after he committed the offense, which precludes the reduction that's available now. Has any Federal court done that? There is a case by Judge Weinstein in the Eastern District of New York, which was not been reversed, in which the judge essentially said what the current policy statement does is it changes the way I'm required to calculate the guidelines. Other than that, all the courts of appeals have not. And that's a case that came out since your brief. Do we have that cited? I do not have it cited, Your Honor. I apologize. But I can bring it to the Court's attention. It's a lower court case. It's not an appellate court. In my opinion, it's in the Eastern District of New York. There was nothing to have stopped Judge Kessler from going down even lower when she originally sentenced him. I know she went to 180 months when his range was 324 to something. Correct. So she could have gone — you know, she said her hands were tied, which I understand. But originally, she could have gone even lower than 180. Correct. There was a 10-year mandatory minimum at the time of the original sentence. So she could have sentenced down to 10 years. But Judge Kessler, in my experience, always hewed to the law, and she calculated the guidelines, and she found the appropriate guidelines to be above the 15-year sentence that she imposed. She reduced the sentence, as she believed she could. But what she said at the re-sentence, essentially, I believe, is, had the guidelines been lower when I originally sentenced, then I would have granted a proportional reduction, which is exactly how this policy statement worked until 2010, when the commission decided to add this phraseology. But it's how this policy statement essentially worked from its inception in 1987. It always had — the language was tweaked here and there, but it always had this ability of the district court to do a proportional reduction, to say, okay, I sentenced you this way when I believed the guidelines were X. Now that the guidelines are below that, I'm still going to adopt or not change my rulings on why your sentence should be below the guideline range. Essentially, that's what the post-Booker guideline sentencing is. Apply the guidelines, but then impose a sentence that the court believes is reasonable under all the circumstances. And all — it just — the ex post facto clause. Now, the commission, in other ways, seeks to limit or seeks to limit the application of the ex post facto clause, but I think that goes well beyond the commission's role. It's up to the courts to determine how ex post facto should be applied. And, again, I go back to the two primary cases by the Supreme Court where the court did not look to — essentially, it was good time credit reductions. The court — at that moment, the defendants did not have sort of a — did not have a sentence reduction. They just had the possibility of getting a good time credit. To me, this 1B1.10 provision is quite similar to that good time credit parole provision that the Supreme Court considered in Weaver v. Graham. Assuming that the provision that you are pointing to were still in effect today, that would not support a downward variance at resentencing in your client's case, would it? It would allow the court the discretion to sentence as — to consider the term. To consider the term it would have imposed. Except for under C, amendments covered by this policy statement are listed as follows, and the amendment that lowered the guidelines range for your client is not listed. Are you saying that is — that all of those are included but not exhaustive of the list of amendments that would be affected? No. There's no question that the amendment that benefits my client was adopted by the commission in 2016 after his sentencing. Referring to other guidelines changes and not the guidelines change that lowered the range for his offense. The amendment that was made retroactive by the sentencing commission was an amendment that applied to all drug guidelines essentially. Right. But I'm saying the more beneficial guidelines version that you're referring to as your touchstone for your ex post facto analysis, even without the subsequent this would not actually apply. But you're saying so, too, the floor, the new floor that's — that constrained the judge's discretion also wouldn't apply and therefore she'd have discretion. What I'm saying — So it's not that the discretion would be given to her by the version of 1B110 that is at A12 of your brief. It's that the mandatory floor below which she cannot go was not yet enacted. Correct. I'm saying that apply the guideline policy statement in effect at the date of the resentencing, which has the drug guideline reduction, but exclude or excise on ex post facto grounds the provision that limits the ability of the district court to grant. So, yes, I'm asking the court to pick one from — not pick one from column A. Apply the guidelines in effect now, but not that portion of the current guideline that damages him in a way that wasn't — that would not have damaged him. And there's no question that it's the way most courts of appeals — but I don't believe in this type of a case. Most of the court of appeal cases involved — I see my time is up — Okay. We'll give you a minute. Thank you. Ms. Heller? Good morning. May it please the Court. Kirby Heller for the United States. An ex post facto law has to present a sufficient or significant risk of increasing the punishment. The 2011 amendment to Section 1B1.10 doesn't do that. By its very nature, Section 1B1.10 applies to legency reductions in sentences when the commission determines after the offense and after sentencing that an amendment to the guidelines should be made and it should be retroactive. The amendment in this case simply — it simply limited the court's leniency to a certain group of defendants, that is, defendants whose sentences under the amended guidelines range — I'm sorry — a defendant whose sentence would fall under the amendment guidelines range. In this case, of course, Mr. Alvorin, when he committed his crime and was sentenced, his base offense level was 38. His guidelines range was 324 to 405 months of imprisonment, and he was sentenced to a variant sentence well below that, to 180 months. There was no — of course, 1B1.10 doesn't even make sense in this context because it applies to post-offense and post-sentencing amendments. But in any event, if one just looks at 1B1.10, as Judge Pillard noted, the amendment to the guidelines drug quantity table was not listed, and so a reduction wouldn't have been authorized, and Mr. Alvorin had no possibility at the time that there would be this — that he was entitled to leniency. Is that right? Would the judge not have been — had leeway to following the sort of general principle of the then-effective 1B1.10 to vary downward in resentencing? Because there wasn't that floor preventing the proportional downward variance at resentencing. That's really the obstacle that she faced, isn't it? If I'm understanding your question right, at the time of the sentencing, of course, the judge, the district court judge, could have sentenced Alvorin to anything 120 months with the mandatory sentence. Right. But at the time of resentencing, but for the amended version of 1B1.10, which placed a floor below — at the bottom of the new guideline range, if that hadn't been in place, does it really matter, does it, that the earlier version, the 2006 version of 1B1.10 didn't specifically refer to the guideline range, the amendment under which his guideline range was lowered, right? Because she — the judge still could have varied lower, but for the new floor. That's correct, Your Honor. And that, of course, is what that policy statement does. The court is required under 3582C to only reduce a sentence if it's consistent with the applicable policy statement in 1B1.10. At the time of this reduction, the commission had determined that there were certain circumstances in which it would grant leniency, but not to defendants whose sentences fell outside of the amended guidelines range. At supposed fact, it was simply not implicated in the case where the court has the discretion after the fact to grant leniency, but limits it. So, for example, this case is unlike Weaver and Lentz, because in those cases, at the time of the offense, these defendants had some basis for believing that the state statutes actually had provided notice that they could be eligible for leniency. After the fact, it was taken away, and their sentences were effectively lengthened. That's not the case here. At ex post facto, it looks at the time of the offense. At the time of the offense, there was no leniency that was then taken away. Well, isn't that not quite right? And just to push that point, at the time of the offense, if a criminal defendant was thinking, well, there's a general trend toward guideline lowering on drug offenses and maybe something's going to come along that I'm going to benefit from, and given my individual circumstances, at least as the sentencing judge saw them, I might actually get a lower still sentence, taking into account proportionally the variance that she gave me. And then along comes the amended version of 1B1.10 and puts a floor under that that prevents him from benefiting at all. And so, in a sense, it's taking away an opportunity for a kind of, you know, as in Lentz and as in Weaver, no? Well, I think the situations are different because those petitioners and the two Supreme Court cases actually did have the opportunity for leniency. Mr. Alvorin didn't. At the time of his offense, you know, possibly the commission seven years later would reduce drug quantity guidelines, but that was not in effect at the time of his offense, at the time of his sentence. What he knew is what his guidelines were. 1B1.10 actually had no effect on him because, you know, it's an after-the-fact reduction. But even if you just look at the terms of 1B1.10, it didn't apply to him. And the law, all the surrounding sentencing law also said that any future reduction had to be consistent with the applicable policy statement. Perfect. So is it the government's position that a new law that places hitherto inapplicable limits on reductions of sentences can never be ex post facto? Is that how broad your position is, that any new law that limits eligibility for reduced sentence cannot be ex post facto? A new law that limits eligibility. For leniency that didn't exist at the time of the offense, yes, that would be our position. And that's the position that the courts of appeals have uniformly taken in looking at ex post facto challenges to 1B1.10. I don't read them that broadly. I mean, they go through a lot more detailed analysis, and I think it's because they don't just look at the number and say, well, this was only an opportunity for leniency, closed case. They actually go through looking at the frame of reference at the time of the offense and looking at how the law's changed and asking whether there's been some opportunity that's been taken away. Well, yes, of course, one has to the courts. What the courts have done, my reading of all those courts, is they look at what the law was at the time of the offense, and they all say at the time of the offense 1B1.10, although it had a broader class of defendants to whom it was applicable, didn't include Amendment 782. That's the law on the effect at the time of the offense. At the time of the sentence modification, that category has been narrowed. 782 applies, but it just limited leniency. Again, we have to remember that the only thing that could happen in a sentence modification is at best a reduction of the sentence, at worst no change, no increase. And the ex post facto clause simply applies when there's some, as I said, at least a sufficient basis for increasing the punishment. Nothing that happened in the Court in 2016 was a sufficient risk of increasing Mr. Alvarez's sentence. He just didn't get the leniency that he would have liked. The other courts of appeals have taken a range of different approaches in terms of reasoning to the, as you note. Is there one or more of those that you particularly would urge us to be guided by? I think the Seventh Circuit's approach in Diggs is a very straightforward, logical approach. The only court that I see as taking a somewhat different approach for arriving at the same result is the Second Circuit, which applies this one-book rule and looks at, by applying the guidelines in effect at the time of the offense or the time of sentencing, and the guidelines in effect at the time of the sentence modification and determine whether there was a sentence increase. And again, in Ramirez, which applied to these very amendments, the Court said there was no ex post facto because that defendant's sentence also had not been increased. And have we not also applied the one-book rule? Excuse me? Have we not also applied the one-book rule? And that works also. It leads to the same result. It's just a slightly different way of getting there. If there are no other questions, we'll rest on our brief. Thank you. Thank you. Okay. Why don't you take a minute? Your Honor, the only thing I would argue, thank you, Your Honor, for giving me the next. The only thing I would argue is that if Congress, for example, today passed a statute that said we're going to reduce the crack or the cocaine penalty across the board, but anyone who got a departure in 2006 will not get the benefit of the reduction of the new statute that applies to every defendant, and we're going to make it retroactive to every defendant except those who got a departure in 2006, which is essentially what this policy statement, what this guideline retroactive amendment is. I think that statute would violate the ex post facto clause to those defendants because it made things more onerous at a time, more onerous based on something that happened, which something that happened after he was sentenced and without any notice that he would be treated differently than all other defendants. This guideline amendment was a general application amendment to all drug defendants, but now it changed. That's the only thing I would argue, that if this had been done by Congress, the ex post facto clause would apply and the court would strike it down. And the one book rule, again, it's the commission deciding what the ex post facto clause means for practical reasons, and the commission does not get to decide how the Constitution is to be interpreted. Thank you. Kagan, as you were appointed by the court to represent your client, we thank you for your assistance. Thank you.
judges: Henderson, Pillard, Edwards